UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:

                                                              Chapter 11

37-02 PLAZA LLC,                                    Case No. 07-40313-ess

                           Debtor.

-------------------------------------------------------------x

## MEMORANDUM DECISION ON THE DEBTOR'S MOTION TO EXPUNGE
## CLAIM NO. 17

Appearances:

Avrum J. Rosen, Esq                                    Michael Tsang, Esq.
The Law Offices of Avrum J. Rosen             The Tsang Law Firm, P.C.
38 New Street                                             14 Wall Street, 22nd Floor
Huntington, New York 11743                       New York, New York 10005
Attorney for 37-02 Plaza LLC                        Attorney for Kam Chan

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of 37-02 Plaza LLC (the "Debtor") to expunge claim number 17 pursuant to Sections 502(a) and 502(b)(1) of Title 11 of the United States Code (the "Bankruptcy Code") in the above-captioned bankruptcy case, and the objection brought by Kam Chan ("Chan"), the claimant in claim number 17.

## JURISDICTION

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O).

## BACKGROUND

On January 22, 2007, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Docket No. 1. The Debtor is a limited liability corporation ("LLC") organized under New York law, and Vincent Tomasino Sr. ("Tomasino") is its manager, principal, and as of the petition date, managing agent. *See* Affidavit of Vincent Tomasino, Sr. ("Tomasino Aff.") ¶ 1; Motion for an Order Reducing, Reclassifying and/or Expunging Claim Nos. 12, 15, and 17 ("Motion to Expunge") ¶ 3; Docket No. 1 (Petition, Official Form 1) at 4.

*Procedural History*

On July 11, 2007, the Debtor filed an Application for an Order Establishing Deadline for Filing Proofs of Claim, and on the same date, the Court granted the Debtor's application and set a bar date of August 28, 2007, for filing proofs of claims. Docket Nos. 64, 66. On August 16, 2007, Chan filed a timely proof of claim for an unsecured nonpriority claim in the amount of $1,427,629.86 ("Claim No. 17"). Claims Register, No. 17-1.

On September 4, 2007, the Debtor filed this Motion to Expunge and supporting affidavit of Vincent Tomasino. Docket Nos. 73, 74.[1] On October 11, 2007, Chan filed an Objection to the Motion to Expunge (the "Objection"). Docket No. 79. On October 15, 2007, the Debtor filed a Reply to the Objection (the "Reply"). Docket No. 80. On December 5, 2007, the Debtor filed a Supplemental Memorandum of Law in Support of Debtor's Motion for an Order Expunging Claim No. 17 Filed by Kam Chan (the "Supp. Mem. in Support"). Docket No. 91. On December 18, 2007, Chan filed a Memorandum of Law in response to the Debtor's Supplemental Memorandum in Support and in further support of the Objection (the "Chan Mem. in Further Support"). Docket No. 93. Hearings were held on the Motion to Expunge with respect to Claim No. 17 at which counsel for the Debtor and counsel for Chan appeared and were heard, and the matter was submitted for decision on April 22, 2008.

*Factual Background*

Claim No. 17 states that the Debtor owes Chan payment on two promissory notes (the "Notes"), each dated July 26, 2005, in the amounts of $1,090,000 ("Note 1"), and $58,000 ("Note 2"). Claims Register, No. 17-1, Promissory Notes dated July 26, 2005. The Notes identify Tomasino and the Debtor as "Maker" and Chan and Robert Yip ("Yip") as "Payee." Claims Register, No. 17-1, Promissory Notes dated July 26, 2005. *See* Motion to Expunge ¶ 18; Supp. Mem. in Support at 3. The Notes state that the Maker promises to pay monthly interest of $6,333.33 and $290 for Note 1 and Note 2 respectively, from July 26, 2006, to the maturity date

---

[1] On October 16, 2007, the Motion to Expunge was granted as to claim number 12, an unsecured nonpriority claim in the amount of $4,000, filed on April 10, 2007, by A Plus Travel Corp.; and claim number 15, an unsecured nonpriority claim in the amount of $5,431, filed on June 22, 2007, by the City of New York. Docket Entry dated October 16, 2007. *See* Docket No. 82 (Order Expunging Claim Nos. 12 and 15 and Adjourning Objection to Claim No. 17).

of July 25, 2010.  Claims Register, No. 17-1, Promissory Notes dated July 26, 2005.  The Notes are signed by Tomasino in his individual capacity and by the Debtor by Vincent Tomasino, Junior, as its "Managing Member."  Claims Register, No. 17-1, Promissory Notes dated July 26, 2005.  Note 1 is also signed with the approval and consent of Margaret Song ("Song") on behalf of Song & Wu Realty Ltd.  Claims Register, No. 17-1, Note 1.  Yip transferred his rights and interests in the Notes to Chan pursuant to an Assignment of Promissory Notes dated July 3, 2007.  Claims Register, No. 17-1, Assignment of Promissory Notes.  *See* Objection ¶ 1 n.2; Motion to Expunge ¶ 18.

The Notes were executed in connection with an Agreement for Sale dated June 29, 2005 (the "Agreement for Sale").  Objection, Exh. A (Agreement for Sale) at 1.  *See* Objection ¶ 3; Motion to Expunge ¶ 17; Supp. Mem. in Support at 2; Chan Mem. in Further Support at 1.  The Agreement for Sale lists Chan and Yip as "Seller" and Tomasino as "Buyer."  Objection, Exh. A (Agreement for Sale) at 1.  It is signed by Chan and Yip as "Seller," Tomasino as "Buyer," Chan as the Debtor's "Managing Member," and Song on behalf of Song & Wu Realty Ltd.  Objection, Exh. A (Agreement for Sale) at 3.

The Agreement for Sale provides for Chan and Yip to sell their seventy percent interest in the Debtor to Tomasino for $1.19 million, and for payment to include the execution and delivery of a promissory note by Tomasino in the amount of $1.09 million and a term of the note to be that "the note shall be guaranteed of payment by 37-02 Plaza LLC."  Objection, Exh. A (Agreement for Sale) ¶ 1(b).  *See* Objection, Exh. A (Agreement for Sale) at 1, ¶ 1; Motion to Expunge ¶¶ 17-18; Objection ¶ 2.  Tomasino and the Debtor executed Note 2 as additional consideration for Chan's and Yip's sale of their seventy percent interest in the Debtor.  Motion

to Expunge ¶ 18; Objection ¶ 3; Supp. Mem. in Support at 2; Chan Mem. in Further Support at 1. On July 26, 2005, Chan and Yip resigned from all offices in the Debtor with immediate effect. Motion to Expunge, Exh. B (Resignation of Kam Chan, Resignation of Robert Yip). *See also* Motion to Expunge, Exh. B (Consent of Members of 37-02 Plaza LLC) (reflecting transfer of shares from Chan and Yip to Maltese Realty Corp. and resignations of Chan and Yip).

## DISCUSSION

Section 101 of the Bankruptcy Code provides that a "claim" encompasses, among other things, a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(a)(5)(A). The Supreme Court has observed that Congress "intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). *See* S. REP. NO. 989, 95th Cong., 2d Sess. 5807-08 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787 (stating that Congress adopted the "broadest possible definition" of claim in order to permit "the broadest possible relief in the bankruptcy court."). According to one commentator:

> By fashioning a single definition of "claim" in the Code, Congress intended to adopt the broadest definition of that term. The Supreme Court has repeatedly reiterated this principle and has declined all invitations to exclude rights from the definition of claim.

2 COLLIER ON BANKRUPTCY ¶ 101.05[1] (15th ed. rev. 2007).

Section 501(a) of the Bankruptcy Code provides that to claim an interest in a debtor's bankruptcy estate, "[a] creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). Bankruptcy Rule 3001(f) states that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P.

3001(f).

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 . . . is deemed allowed unless a party in interest . . . objects." 11 U.S.C. § 502(a). "[I]f such an objection to a claim is made, the court, after notice and a hearing, . . . shall allow such claim . . . except to the extent that – such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law . . . ." 11 U.S.C. §§ 502(b), 502(b)(1).

The party objecting to a properly filed claim has the burden of introducing sufficient evidence to overcome that claim's prima facie validity. *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). *See* 9 COLLIER ON BANKRUPTCY ¶ 3001.09[2] (15th ed. rev. 2007). The ultimate burden of proof with respect to a disputed claim lies with the claimant. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3d Cir. 1992) ("If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.").

Here, Chan filed a timely proof of claim and identified the Debtor's indebtedness under the Notes as the basis for his claim. Claims Register, No. 17-1. The Debtor argues in this Motion to Expunge that the Notes are legally unenforceable for lack of consideration and that any payments made on the Notes would violate Section 508 of New York's Limited Liability Company Law (the "New York LLC Law"). Motion to Expunge ¶¶ 18-22; Supp. Mem. in Support at 6. The ultimate burden of proof, then, lies with Chan to demonstrate that the Notes are enforceable against the Debtor.

*Whether the Notes Are Supported by Consideration*

The Debtor argues that the Notes are not enforceable against it because they are not supported by consideration. Motion to Expunge ¶ 18. Specifically, the Debtor argues that it did not receive an interest in Chan's or Yip's stock, or any other benefit, in exchange for its obligation on the Notes. Motion to Expunge ¶¶ 18-20; Reply ¶ 1; Supp. Mem. in Support at 3, 7. The Debtor cites the New York Court of Appeals case of *Torelli v. Esposito*, 63 N.Y.2d 903, 483 N.Y.S.2d 204, 472 N.E.2d 1032 (1984), where the court reinstated the trial court's denial of a plaintiff's motion for summary judgment seeking to enforce a promissory note received by the plaintiff's decedent in connection with the sale of certain stock. *Torelli,* 63 N.Y.2d at 904, 483 N.Y.S.2d at 205, 472 N.E.2d at 1032. The court found that the lower court correctly determined that a question of fact was presented as to the defendant's obligation to pay on the promissory note, in light of evidence supporting the allegations that the plaintiff's decedent "did not own the subject stock, that the sale had never in fact occurred, and that the obligation to pay therefore lacked consideration." *Torelli,* 63 N.Y.2d at 904, 483 N.Y.S.2d at 205, 472 N.E.2d at 1032. *See* Motion to Expunge ¶¶ 19-20.

Chan argues that the Debtor received consideration in exchange for its obligations under the Notes. Objection ¶¶ 3, 5, 21-34. He argues that consideration requires either that the promisor receive a benefit or that the promisee suffer a detriment. Objection ¶¶ 27-28; Chan Mem. in Further Support at 8-10. Chan cites *Bulger v. Colonial House of Flushing, Inc.*, 281 A.D. 847, 119 N.Y.S.2d 233 (App. Div. 2d Dep't 1953), in which the Appellate Division affirmed the entry of summary judgment in favor of plaintiffs who sued to recover on a promissory note signed by the defendant. *Bulger*, 281 A.D. at 847, 119 N.Y.S.2d at 234. *See* Objection ¶¶ 25-27; Chan Mem. in Further Support at 8. There, the defendants argued that

consideration was absent because in exchange for the promissory note, the plaintiffs transferred their stock to individuals other than the defendant, and the defendant itself did not receive any stock. *Bulger*, 281 A.D. at 847, 119 N.Y.S.2d at 234. The Appellate Division concluded that consideration was present as a result of the detriment to the plaintiffs who transferred their stock. *Id.* Chan argues that because a detriment to a promisee may constitute consideration, there is consideration here because Chan and Yip transferred their stock in the Debtor in reliance on the Debtor's obligation on the Notes. Objection ¶¶ 27, 29; Chan Mem. in Further Support at 2, 10.

Chan also argues that the adequacy of consideration is generally determined by parties to an agreement, and should not be reviewed by the court unless there is reasons to suspect fraud or unconscionability. Objection ¶¶ 31-33. He also states that consideration may be deemed insufficient only where the inequality is so great as to shock the conscience, and that no such inequality is present here. Objection ¶ 33.

"Consideration, or a substitute such as promissory estoppel, is necessary for an agreement to be enforceable." BLACK'S LAW DICTIONARY 1552 (8th ed. 2004). The doctrine of consideration requires performance or a returned promise that has been bargained for by each party to an agreement. RESTATEMENT (SECOND) OF CONTRACTS § 71(1) (2007). Discerning the existence, rather than the adequacy, of consideration is the court's primary task. Richard A. Lord, WILLISTON ON CONTRACTS § 7:21 (4th ed. 2007). As the New York Court of Appeals observed, "[a]bsent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny." *Apfel v. Prudential-Bache Sec., Inc.*, 81 N.Y.2d 470, 476, 600 N.Y.S.2d 433, 435, 616 N.E.2d 1095, 1097 (1993) (citation omitted). Exceptions to this rule are rare indeed. *See, e.g.*, *Mandel v. Liebman*, 303 N.Y. 88, 94, 100 N.E.2d 149, 152 (1951)

(explaining that courts may consider the adequacy of consideration where the contract is "such as no man in his senses and not under a delusion would make on the one hand, and as no honest or fair man would accept, on the other") (quotations omitted).  *See also Torelli,* 63 N.Y.2d at 904, 483 N.Y.S.2d at 205, 472 N.E.2d at 1032 (a question of fact is presented where the evidence shows that, among other things, the sale at issue "never in fact occurred").

A benefit to a third party may satisfy the requirement of consideration.  As one court found, "under contract law, a contract is supported by consideration even if the consideration flows solely to a third party."  *In re Asia Global Crossing, Ltd.*, 344 B.R. 247, 252 (Bankr. S.D.N.Y. 2006).  *See* RESTATEMENT (SECOND) OF CONTRACTS § 71, cmt. e (2007) ("It matters not from whom the consideration moves or to whom it goes.  If it is bargained for and given in exchange for the promise, the promise is not gratuitous.").

Detriment to a promisee may also satisfy the requirement of consideration.  22 N.Y. JUR. 2D CONTRACTS § 76 (2008) ("A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract.")  *See* Richard A. Lord, WILLISTON ON CONTRACTS § 7:4 ("It is often stated that the consideration required to support a promise is a detriment incurred by the promisee or a benefit received by the promisor at his request.").

Here, the Debtor was a maker on the Notes in connection with the Agreement for Sale pursuant to which Chan and Yip sold their seventy percent interest in the Debtor to Tomasino. Objection, Exh. A (Agreement for Sale) at 1, ¶¶ 1, 1(b).  *See* Motion to Expunge ¶¶ 17-18; Objection ¶ 2.  Chan, Yip, Tomasino, and the Debtor signed the Agreement for Sale, and Chan and Yip suffered a detriment when they transferred their stock.  Objection, Exh. A (Agreement for Sale) at 3.  The Agreement for Sale provides that in exchange for their stock, Chan and Yip

received the benefit of the Notes, of which the Debtor is a Maker. Claims Register, No. 17-1, Promissory Notes dated July 26, 2005. Tomasino, not the Debtor, received the benefit of the stock sold by Chan and Yip. That is, the Debtor bargained for a benefit to a third party, namely Tomasino, in exchange for its obligation under the Notes. That benefit to a third party is consideration for the Debtor's obligation under the Notes.

In addition, under the Agreement for Sale, Chan and Yip transferred their seventy percent interest in the Debtor in reliance on the obligations of Tomasino and the Debtor under the Notes. Chan's and Yip's relinquishment of their stock interests was a detriment which was bargained for by the Debtor in exchange for its liability under the Notes. That is, the Debtor bargained for a detriment to Chan and Yip as promisees in exchange for its obligation under the Notes. That detriment to Chan and Yip as promisees is also consideration for the Debtor's obligation under the Notes.

For all of these reasons, and based on the entire record, Chan has shown that the Notes are supported by consideration and may be enforced against the Debtor.

*Whether the Debtor's Payments Under the Notes Violate the New York LLC Law*

The Debtor argues that payments on the Notes violate Section 508 of the New York LLC Law. Supp. Mem. in Support at 6. The Debtor notes that Section 508 prohibits distributions to members of an LLC when the entity is insolvent or the distributions will render it insolvent.[2] Supp. Mem. in Support at 5-6. The Debtor argues that it made payments on the Notes beginning in July 2006, when it was insolvent. Supp. Mem. in Support at 5. The Debtor argues that its

---

[2] The Debtor also argues that Sections 513 and 514 of New York's Business Corporation Law provide that a corporation may not purchase its own stock when the corporation is insolvent or would be made insolvent by the purchase. Reply at 2-3; Supp. Mem. in Support at 1.

insolvency is apparent from the fact that the Debtor was unable to pay its rent at that time.  Supp. Mem. in Support at 5.

The Debtor also argues that payments on the Notes by it or by the Debtor's bankruptcy estate to Chan amount to distributions to both Chan and Tomasino that violate Section 508 because "both [have been] members of the Debtor at some point in time."  Supp. Mem. in Support at 6.  *See* Supp. Mem. in Support at 5-7.  The Debtor asserts that payments to Chan represent "a distribution to . . . a former member of the Debtor for his interest in the Debtor," as well as distributions to Tomasino, because "[t]he Debtor's assumption of the financial obligations of its member, Vincent Tomasino Sr., is a distribution to [him]."  Supp. Mem. in Support at 1.  *See* Supp. Mem. in Support at 6.

Chan argues that the Debtor's payments under the Notes do not violate Section 508 because "there were no 'distributions' that were made to any 'member' of the Debtor."  Chan Mem. in Further Support at 5.  *See* Chan Mem. in Further Support at 4-6.  Chan notes that he has not been a member of the Debtor since he sold his stock under the Agreement for Sale and resigned his offices in the Debtor.  Chan Mem. in Further Support at 4-6.

Chan also argues that any recovery of a purported distributions to Tomasino should be sought from Tomasino, not from him.  Chan Mem. in Further Support at 4, 7.  At the same time, Chan argues that the Debtor's payments did not violate Section 508, because at the time of the payments, Tomasino had already sold his interests to another entity, Maltese Realty Corporation, and was no longer a member of the Debtor.  Chan Mem. in Further Support at 6.

Chan further argues that Section 508 does not impose liability on a member who receives a distribution that violates Section 508 but is unaware of the violation.  Chan Mem. in Further

10

Support at 6. *See* N.Y. LTD. LIAB. CO. LAW § 508(b). Chan asserts that even if the Debtor made a prohibited distribution to Chan or Tomasino, the Debtor has not shown that either Chan or Tomasino knew that the distribution ran afoul of Section 508 or exceeded the Debtor's assets. Chan Mem. in Further Support at 6.

Finally, Chan argues that the Debtor made five interest-only payments of approximately $6,000, each under Note 1 and did not make any payments under Note 2. Chan Mem. in Further Support at 7. *See* Claim No. 17, Rider. He argues that the Debtor has not shown that the payments rendered the Debtor insolvent. Chan Mem. in Further Support at 7.

As an LLC, the Debtor is subject to the New York LLC Law. Section 508(a) states:

> A limited liability company shall not make a distribution to a member to the extent that, at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their membership interests and liabilities for which recourse of creditors is limited to specified property of the limited liability company, exceed the fair market value of the assets of the limited liability company, except that the fair market value of property that is subject to a liability for which the recourse of creditors is limited shall be included in the assets of the limited liability company only to the extent that the fair value of such property exceeds such liability.

N.Y. LTD. LIAB. CO. LAW § 508(a). *See Die Fliedermaus LLC v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 108 (Bankr. S.D.N.Y. 2005).

Section 102(i) of the New York LLC Law defines a "distribution" as "the transfer of property by a limited liability company to one or more of its members in his or her capacity as a member." N.Y. LTD. LIAB. CO. LAW § 102(i). Section 102(q) of the New York LLC Law defines a "member" as:

> [A] person who has been admitted as a member of a limited liability company in accordance with the terms and provisions of this chapter and the operating agreement and has a membership interest in a limited liability company with the rights, obligations, preferences and limitations specified under this chapter and

11

the operating agreement.

N.Y. LTD. LIAB. CO. Law § 102(q).

The Agreement for Sale, dated June 29, 2005, provides for Chan and Yip to sell their stock in the Debtor to Tomasino. Objection, Exh. A (Agreement for Sale) at 1, ¶¶ 1, 1(b). *See* Motion to Expunge ¶¶ 17-18; Objection ¶ 2. On July 26, 2005, Chan and Yip resigned from all offices in the Debtor with immediate effect. Motion to Expunge, Exh. B (Resignation of Kam Chan, Resignation of Robert Yip). Having sold their stock in the Debtor and resigned from their positions in the Debtor, as of July 26, 2005, Chan and Yip no longer had any position or membership interest in the Debtor.

The Notes provide for the Maker – that is, Tomasino and the Debtor – to make interest payments to Chan and Yip commencing as of July 26, 2006. The Debtor began to make payments in approximately July 2006. Supp. Mem. in Support at 5; Chan Mem. in Further Support at 6. So when the Debtor made payments under the Notes, beginning in July 2006, Chan and Yip were not "members" for the purposes of Section 508. As a result, the Debtor's payments were not impermissible distributions to Chan and Yip under Section 508. For the same reasons, payments to Chan from the Debtor's bankruptcy estate would not violate Section 508.

Tomasino is the Debtor's manager, principal, and as of the petition date, managing agent. *See* Tomasino Aff. ¶ 1; Motion to Expunge ¶ 3; Docket No. 1 (Petition, Official Form 1) at 4. Pursuant to the Agreement for Sale, he also purchased seventy percent of the membership units of the Debtor. Objection, Exh. A (Agreement for Sale) ¶ 1. For these reasons, he was, "at some point in time," a member of the Debtor under Section 102(q) of the New York LLC Law. Supp.

Mem. in Support at 6.  *See* N.Y. LTD. LIAB. CO. Law § 102(q).

The Debtor's payments to Chan and Yip may be viewed as providing a benefit to Tomasino to the extent that they reduced the amount due under the Notes, which are a shared obligation of Tomasino and the Debtor.  Claims Register, No. 17-1, Promissory Notes dated July 26, 2005.  *See* Motion to Expunge ¶ 18; Supp. Mem. in Support at 3.  But the Debtor made those payments pursuant to its contractual obligation as a Maker on the Notes, not as a distribution to Tomasino "in his . . . capacity as a member" of the Debtor.  N.Y. LTD. LIAB. CO. LAW § 102(i).  As a result, the Debtor's payments were not impermissible distributions to Tomasino under Section 508.  For the same reasons, payments to Chan from the Debtor's bankruptcy estate would not violate Section 508.

For all of these reasons, and based on the entire record, the Debtor's payments to Chan and Yip under the Notes did not violate Section 508 of the New York LLC Law, and future payments to Chan from the Debtor's bankruptcy estate under the Notes would not violate Section 508.

## **CONCLUSION**

Based on the entire record, after consideration of the submissions and the arguments of counsel, and for the reasons set forth herein, the Debtor's Motion to Expunge is denied with

respect to Claim No. 17. An order in accordance with this Memorandum Decision will be entered simultaneously herewith.

Dated: Brooklyn, New York
      May **9**, 2008

                                 ***S/Elizabeth S. Stong***_____
                                 ELIZABETH S. STONG
                                 UNITED STATES BANKRUPTCY JUDGE